UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XIAO P. CHEN, SHIMING CHEN, and YAMINN YAN, | MEMORANDUM & ORDER |
| Plaintiffs, | 23-CV-2279 (NGG) |
| -against- | |
| ANTONY BLINKEN, UNITED STATES SECRETARY OF STATE; NICHOLAS BURNS, UNITED STATES AMBASSADOR TO CHINA; and LISA K. HELLER, UNITED STATES CONSUL GENERAL, GUANGZHOU, | |
| Defendants. | |

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Xiao P. Chen, Shiming Chen, and Yamin Yan (collectively, "Plaintiffs") brought this action against Defendants Antony Blinken, Nicholas Burns, and Lisa K. Heller (collectively, "Defendants") in their official capacities as United States Secretary of State, United States Ambassador to China, and United States Consul General for the United States Consulate in Guangzhou, China, respectively. (Complaint ("Compl.") (Dkt. 1).) Plaintiffs ask this court to invalidate Defendants' decisions denying the immigrant visa applications ("IV Applications") of Plaintiffs' respective relatives and to compel Defendants to adjudicate the IV Applications in accordance with the applicable immigration laws. (*See generally id.*) Defendants now move to sever this action pursuant to Federal Rule of Civil Procedure 21, and move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the doctrine of consular nonreviewability bars judicial review of Defendants' denial of the IV Applications. (Defendants' Motion to Sever and Dismiss ("Defs.' Mot.") (Dkt. 19-1).) Plaintiffs oppose the motion. (Plaintiffs' Opposition to Defendants' Motion to

1

Sever and Dismiss ("Pls.' Opp.") (Dkt. 20).) For the reasons that follow, Defendants' motion to dismiss is GRANTED, and Defendants' motion to sever is DENIED as moot. Plaintiffs Xiao P. Chen and Shiming Chen's claims are dismissed with prejudice and Plaintiff Yamin Yan's claims are dismissed without prejudice.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

Congress establishes the terms of noncitizen entry into the United States, and the Department of State implements those requirements at its embassies and consulates in foreign countries. Noncitizens residing outside of the United States typically need a visa to be admitted to the United States. Congress enacted a "streamlined" visa application process for noncitizens with immediate relatives in the United States whereby the citizen first files a petition with the United States Citizenship and Immigration Services ("USCIS") to have the noncitizen classified as an immediate relative, and, if USCIS approves the petition, then the noncitizen-relative may apply for an immigrant visa. *See Dep't of State v. Muñoz*, 602 U.S. 899, 904 (2024) ("*Muñoz II*");[1] 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A), 1201(a), 1202(b). A United States consular officer located in the consular district where the noncitizen resides then reviews the noncitizen's visa application, interviews the applicant, and decides whether to issue the noncitizen a visa to enter the United States. *See* 8 U.S.C. §§ 1201(a)(1), 1202; 22 C.F.R. §§ 42.61, 42.62. Upon a determination that a noncitizen visa applicant is ineligible for admission into the United States, consular officers must provide the noncitizen with a timely written notice that "(A) states the determination, and (B) lists the specific provision or provisions

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

of law under which the [noncitizen] is inadmissible." 8 U.S.C. §
1182(b)(1).

### B.   Factual and Procedural Background

#### 1.   Immigrant Visa Applications[2]

Plaintiff Xiao P. Chen ("Plaintiff Xiao" or "Xiao") resides in
Queens, New York and is a United States citizen. (Compl. ¶ 5.)
In 2007, Plaintiff Xiao filed a petition with USCIS to have her
sister, Xiaolian Chen, who lived in China at the time, classified as
Plaintiff Xiao's immediate relative. (*Id.* ¶¶ 11-12.) USCIS ap-
proved the petition on January 27, 2010. (*Id.* ¶ 11.) Xiaolian
Chen then submitted an immigrant visa application. (*Id.* ¶ 12.)
On October 25, 2021, a consular officer at the United States Con-
sulate in Guangzhou interviewed Xiaolian Chen. (*Id.* ¶ 15.) Two
days later, the consulate denied Xiaolian Chen's visa application
on the grounds of "[f]raud or misrepresentation" pursuant to Im-
migration and Nationality Act Section 212(a)(6)(C) (codified at
8 U.S.C. § 1182(a)(6)(C)). (Compl., Exhibit A ("Xiolian Chen IV
Application Denial").) The denial also indicated that a waiver
may be available, directing Xiaolian Chen to contact USCIS. (*Id.*)
Plaintiff Xiao suspects that "the denial was based on a prior peti-
tion filed for the benefit of Xiaolian Chen by a prior husband,
which was denied in 2005." (Compl. ¶ 18.) Through counsel,
Plaintiff Xiao reached out to the consulate to dispute the denial
and also reached out to LegalNet, an email service operated by
the Department of State for case-specific legal inquiries concern-
ing U.S. visas. (*Id.* ¶¶ 18-20.) Plaintiff Xiao submitted "numerous
correspondences and internal appeals" to Defendants, none of
which were successful in overturning the denial. (*Id.* ¶ 21.) De-
fendants maintain that their denial of Xiaolian Chen's visa

---

[2] The following facts are drawn from the Complaint and, for purposes of
this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys.
v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

application was proper under 8 U.S.C. § 1182(a)(6)(C). (*See* Reply in Support of Defendants' Motion to Sever and Dismiss ("Defs.' Reply") (Dkt. 21) at 13.)

Plaintiff Shiming Chen ("Plaintiff Shiming" or "Shiming") resides in Brooklyn, New York and is a United States citizen. (Compl. ¶ 6.) In 2018, Plaintiff Shiming filed a petition with USCIS to have his mother, Jinyu Deng, who lived in China at the time, classified as his immediate relative. (*Id.* ¶¶ 22-23.) USCIS approved the petition on December 11, 2018. (*Id.* ¶ 22.) Deng then submitted an immigrant visa application. (*Id.* ¶ 23.) On May 10, 2021, a consular officer at the United States Consulate in Guangzhou interviewed Deng and informed her that her application was being denied. (*Id.* ¶ 26.) The consulate denied the Jinyu Deng's visa application on the grounds of "[f]raud or misrepresentation" pursuant to Immigration and Nationality Act Section 212(a)(6)(C). (Compl., Exhibit C ("Jinyu Deng IV Application Denial") at 1.) The denial also indicated that a waiver may be available, directing Deng to contact USCIS. (*Id.*) Along with the denial, Deng was also given another form which noted that her case "require[d] additional processing" and requested that she submit her passport and a copy of the certificate of divorce from her former husband, Pui Sum Lam. (*Id.* at 4.) Plaintiff Shiming suspects that "the denial was based on a prior petition filed for the benefit of his mother Jinyu Deng by her prior husband, Piu Sum Lam, which was denied in 2009." (Compl. ¶ 30.) Through counsel, Plaintiff Shiming reached out to the consulate to dispute the denial and also reached out to LegalNet for assistance. (*Id.* ¶¶ 29-32.) Plaintiff Shiming submitted "numerous correspondences and internal appeals" to Defendants, none of which were successful in overturning the denial. (*Id.* ¶ 33.) Defendants maintain that their denial of Jinyu Deng's visa application was proper under 8 U.S.C. § 1182(a)(6)(C). (*See* Defs.' Reply at 13.)

Plaintiff Yamin Yan ("Plaintiff Yan" or "Yan") resides in California and is a United States citizen. (Compl. ¶ 7.) In 2009, Plaintiff Yan filed a petition with USCIS to have his wife, Xiuying Zhang ("Xiuying"), who lived in China at the time, classified as his immediate relative. (*Id.* ¶ 34.) USCIS approved the petition on December 10, 2012. (*Id.*) On June 18, 2015, Yan received a notice from USCIS revoking the 2012 approval of his petition on the grounds of alleged marriage fraud in Xiuying's prior marriage. (*Id.* ¶ 35.) On September 14, 2018, Yan submitted another petition with USCIS. (*Id.* ¶ 36.) In the second petition, Plaintiff Yan asserted that a USCIS officer, Richo Zhang ("Richo"), solicited bribes from Yan and Xiuying in order to facilitate the original approval of the 2012 petition, which Plaintiffs allege was ultimately revoked by Richo in retaliation against Yan and Xiuying for filing various complaints against him. (*See generally* Compl., Exhibit N ("Second Yamin Yan I-130 Petition") at 3-5.) Specifically, Plaintiff Yan alleges that in 2009 Richo requested $40,000 from Yan in return for excluding damaging information from Yan's immigration application: namely, that Zhang's previous marriage was "fraudulent." (*Id.* at 3.) Plaintiff Yan asserts that consular officials fabricated a confession made by Zhang attesting to this fraud. (*Id.* at 4.) Yan subsequently paid Richo $20,000 to remove the damaging information. (*Id.*) When Richo later informed Yan that "he could no longer help," Yan informed Richo of Yan's intent to file a complaint against Richo, and Richo "threaten[ed]" immigration consequences against Yan and his wife. (*Id.*)

On November 19, 2019, USCIS sent Yan a Notice of Intent to Deny the second petition, asking him to prove that Xiuying Zhang's previous marriage was validly terminated. (Compl. ¶ 39, Exhibit O ("Response to Notice of Intent to Deny") at 3.) Yan responded to the notice and USCIS approved the petition on January 8, 2020, classifying Xiuying Zhang as Plaintiff Yan's immediate relative. (Compl. ¶ 40, Response to Notice of Intent

to Deny, Exhibit M ("I-797 Notice of Action").) Xiuying Zhang then submitted an immigrant visa application. (Compl. ¶ 41.) On March 2, 2021, a consular officer at the United States Consulate in Guangzhou interviewed Zhang and sent her home with a denial notice. (*Id.* ¶ 44.) The consulate denied Xiuying Zhang's visa application on the grounds of "[f]raud or misrepresentation" pursuant to Immigration and Nationality Act Section 212(a)(6)(C). (Compl., Exhibit B ("Xiuying Zhang IV Application Denial").) The denial also said that a waiver may be available, directing Xiuying Zhang to contact USCIS. (*Id.*) Through counsel, Plaintiff Yan reached out to the consulate to dispute the denial and also reached out to LegalNet for assistance. (Compl. ¶¶ 47-49.) Plaintiff Yan "argued that the fraud related to Mrs. Zhang's prior husband ha[d] been resolved by USCIS in her favor, as shown by the 2020 approval of the" second petition. (*Id.* ¶ 48.) Plaintiff Yan argued further that because "USCIS reversed its 2018 revocation due to fraud . . . Defendants were disallowed from using a prior petition to deny the instant Zhang IV Application." (*Id.*) Plaintiff Yan submitted "numerous correspondences and internal appeals" to Defendants, none of which have been successful in overturning the denial. (*Id.* ¶ 50.) Defendants maintain that their denial of Xiuying Zhang's visa application was proper under 8 U.S.C. § 1182(a)(6)(C). (*See* Defs.' Reply at 13.)

Plaintiffs make no claim that the consular officers who reviewed the IV Applications were the same person.

### 2.  Procedural Background

On March 24, 2023, Plaintiffs filed the Complaint against Defendants alleging five causes of action. (*See* Compl. ¶¶ 56-143.) The Complaint's five counts are as follows: (1) "the visa denial was not facially legitimate and bona fide," (2) "the visa denial was issued in bad faith," (3) "the visa denial violated constitutional separation of powers principles," (4) "the visa denial violated the Fifth Amendment to the US Constitution," and

(5) "the visa denial's lack of judicial review violates the Administrative Procedures Act." (Compl. at 8, 13, 17-18, 20.) Plaintiffs request that the court declare Defendant's denials of the IV Applications legally invalid, compel Defendants to process the IV Applications "in a manner accordance with applicable law and regulation," and grant Plaintiffs attorney's fees and costs under the Equal Access to Justice Act. (Compl. at 22.)

Defendants filed their fully briefed motion to dismiss on December 11, 2023. (*See* Defs.' Mot.; Pls.' Opp.; Defs.' Reply.) Two months later, Defendants advised the court that the Supreme Court granted certiorari in *Dep't of State v. Muñoz*, 50 F.4th 906 (9th Cir. 2022) ("*Muñoz I*"), a case that Plaintiffs relied upon extensively in their opposition brief. (*See* February 15, 2024 Defendants' Letter to Court (Dkt. 22); Pls.' Opp. at 34, 44-45, 48-49.) On June 21, 2024, the Supreme Court issued its decision, reversing the Ninth Circuit. *See Muñoz II*, 602 U.S. at 919. On June 24, 2024, the court directed the parties to submit supplemental briefing addressing the impact of *Muñoz II* on the instant case. The parties timely filed their respective supplemental briefing. (*See* Plaintiffs' Brief on *Dep't of State v. Muñoz* ("Pls.' *Muñoz II* Br.") (Dkt. 23); Defendants' Supplemental Brief on *Dep't of State v. Muñoz* ("Defs.' *Muñoz II* Br.") (Dkt. 24).)

## II.  LEGAL STANDARD

### A.  Federal Rules of Civil Procedure 20 and 21

Rule 20 rule permits persons to join in one action as plaintiffs if "(A) they assert any right of relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). In assessing whether the requirements of Rule 20 have been met, the court accepts the factual allegations in the plaintiffs' complaint as true. *Deskovic v.*

*City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). However, Plaintiffs have the burden of proving that both of Rule 20's criteria have been met for their permissive joinder to be proper. *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) (noting that Rule 20 requires that "*the plaintiffs* assert a right to relief arising from the same transaction or occurrence" (emphasis added)); *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 827 (S.D.N.Y. 2008).

Rule 21 empowers a district court to "sever any claim against a party" if the court concludes that plaintiffs' claims were improperly joined. Fed. R. Civ. P. 21. The decision whether to grant a severance is "committed to the sound discretion of the trial court." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).

### B.   Federal Rule of Civil Procedure 12(b)

"A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action." *Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 240 (E.D.N.Y. 2024). Rule 12(b)(1) provides for dismissal of civil cases for "lack of subject matter jurisdiction" upon a defendant's motion. Fed. R. Civ. P. 12(b)(1). The court also has an independent obligation to assure itself of its own jurisdiction. *Arnold v. Lucks*, 392 F.3d 512, 517 (2d Cir. 2004). A dismissal for lack of subject matter jurisdiction is proper when the court finds, by a preponderance of the evidence, that it "lacks the statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a Rule 12(b)(1) motion, the district court "may refer to evidence outside the pleadings." *Id.*

Rule 12(b)(6) provides for dismissal of civil cases for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* "Dismissal under Rule 12(b)(6) is therefore appropriate only if it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024).

In deciding a motion to dismiss, the court accepts as true all factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020). In addition to the complaint, the court may consider "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020). A document is integral to the complaint when the complaint "relies heavily upon [the document's] terms and effect." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6), arguing that Plaintiffs' claims are barred under the doctrine of consular nonreviewability.[3] Plaintiffs oppose the motion to dismiss, asserting that Defendants use

---

[3] In the event that the court grants Defendants' motion to sever, Defendants request that the court dismiss Plaintiffs Shiming Chen and Yamin Yan's claims "without prejudice with leave to refile." (Defs.' Mot. at 1 n.1.)

consular nonreviewability as an "overboard [sic] shield," failed to provide a "facially legitimate and bona fide reason" for the visa denials, and acted in bad faith in denying the IV Applications. (Pls.' Opp. at 21, 35-42.) Plaintiffs first argued that the visa denials infringed on their Fifth Amendment due process right to marriage recognized by the Supreme Court in *Obergefell v. Hodges*, 576 U.S. 644, 909 (2015), and that this violation is a "basis for an exception to the doctrine of consular nonreviewability." (*See* Pls.' Opp. at 42-45 (noting that "the Second Circuit has not foreclosed consular review of Fifth Amendment due process claims, such as the ones pressed here by Plaintiffs).) Following the Supreme Court's holding in *Muñoz II* that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country," 602 U.S. at 909, Plaintiffs now argue that the "'facially legitimate and bona fide reason' test does not require the violation of a constitutional right before it is applied," (Pls.' *Muñoz II* Br. at 3). Plaintiffs further maintain that Defendants' failure to provide a *timely* "facially legitimate and bona fide reason" for the visa denials also provides a basis for judicial review because timeliness and its relation to the doctrine of consular nonreviewability was not addressed in *Muñoz II* and remains an open question in this Circuit. (*Id.* at 6-8.)

Defendants attach three declarations to their motion to dismiss. (*See* Declaration of Rachel Hines as to the Visa Application of Jinyu Deng (Dkt. 19-2); Declaration of Rachel Hines as to the Visa Application of Xiaolian Chen (Dkt. 19-3); Declaration of Rachel Hines as to the Visa Application of Xiuying Zhang (Dkt. 19-4) (collectively, the "Declarations").) Declarant Rachel Hines, a State Department employee, prepared all three declarations and

---

In the event that the court denies Defendants' motion to sever, Defendants' ask the court to dismiss the Complaint in its entirety on the grounds of consular nonreviewability. (*Id.*)

claims to have reviewed the State Department's electronic records regarding the IV Applications. (*See id.*) Defendants' argument that the court should consider the Declarations in deciding their motion because the Declarations reference documents appended to the Complaint is unavailing. (*See* Defs.' Reply at 2 n. 1.) The Declarations were all executed on September 15, 2023, six months after the Complaint was filed on March 24, 2023. (*Compare* Declarations *with* Compl.) Furthermore, in preparing the Declarations, Hines reviewed State Department records regarding the IV Applications that have not been made available to Plaintiffs. (*See* Declarations.) Because the Declarations did not exist prior to the commencement of this Action, none of the Declarations were or could have been attached to the Complaint or incorporated in it by reference. *See Strock*, 982 F.3d at 63. The Declarations also cannot have been integral to the Complaint because the Complaint could not have relied upon the "terms and effect" of Declarations that did not exist. *See DiFolco*, 622 F.3d at 111. Accordingly, the court will not consider the Declarations in adjudicating Defendants' motion to dismiss.

Defendants also move to sever Plaintiffs' claims. (Defs.' Mot. at 8.) Specifically, Defendants argue that Plaintiffs' claims do not arise from the same transaction or occurrence and do not present common questions of law or fact. (*Id.* at 8-10.) Defendants also assert that adjudicating Plaintiffs' claims together would not facilitate judicial economy and that Plaintiffs would not be prejudiced by severance. (*Id.* at 10.) Accordingly, Defendants ask the court to sever the claims brought by Plaintiffs Shiming Chen and Yamin Yan from this action, leaving the first named Plaintiff, Xiao P. Chen, as the sole Plaintiff in this action. (*Id.*) Plaintiffs oppose the motion to sever, asserting that they have met the standard for permissive joinder under Rule 20 because their individual claims "collectively constitute a series of transactions or occurrences that share common questions of law and fact." (Pls.' Opp. at 12.)

### A. Motion to Dismiss

The doctrine of consular nonreviewability arises from the bedrock principle of separation of powers. For more than a century, the Supreme Court has recognized "that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018). Once Congress delegates discretionary authority to executive officials to admit noncitizens, an official's exercise of that authority is largely "immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-91 (1952). Under the doctrine of consular nonreviewability, "'as a rule,' a federal court 'cannot review' 'a consular officer's denial of a visa.'" *Esghai v. U.S. Dep't of State*, No. 24-CV-2993 (PAE), 2024 WL 4753799, at *3 (S.D.N.Y. Nov. 12, 2024) (quoting *Muñoz II*, 602 U.S. at 908). A consular officer's decision not to admit a noncitizen to the United States is "final and conclusive." *Muñoz II*, 602 U.S. at 908.

However, courts have recognized a narrow exception to the consular nonreviewability doctrine based on language from *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). Although the consular nonreviewability doctrine counsels against judicial review, the executive still has an obligation to provide a "facially legitimate and bona fide reason" when it "exercises [its visa] power negatively." *Id.* The *Mandel* court announced this exception in a First Amendment case concerning the rights of American citizens to hear speech from a noncitizen who wanted to visit the United States, but the Court also noted that the decision did not determine that the exception applies *only* to violations of First Amendment rights. *Id.* ("What First Amendment or *other grounds* may be available for attacking exercise of discretion for which no justification whatsoever is advanced is a question we neither address or decide in this case." (emphasis added)).

Upon the denial of a visa application, consular officers must provide the applicant with a "timely written notice" that: (1) "states the determination" and (2) "lists the specific provision or provisions of law under which the [noncitizen] is inadmissible." 8 U.S.C. § 1182(b)(1). The Second Circuit has held that even when a consular officer provides a purportedly legitimate reason for a visa denial, the doctrine of consular nonreviewability will not preclude judicial review if the plaintiff makes a "well supported allegation of bad faith." *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 137 (2d Cir. 2009). To make a showing of bad faith, "'it is not enough to allege that the consular official's information was incorrect'. . . [i]nstead, a petitioner must plausibly and with particularity allege 'that the consular official did not in good faith believe the information he had.'" *Saleh v. Tillerson*, 293 F. Supp. 3d 419, 433 (S.D.N.Y. 2018) (quoting *Bustamante v. Mukasey*, 531 F.3d 1059, 1062-63 (9th Cir. 2008)).

In *Muñoz II*, the Supreme Court clarified two legal issues relevant to the disposition of this matter. First, the Second Circuit has held that the consular nonreviewability doctrine does not strip federal courts of subject matter jurisdiction. *See Napolitano*, 573 F.3d at 123-25. The Supreme Court affirmed that reasoning when it explained that "the doctrine of consular nonreviewability is not jurisdictional." *Muñoz II*, 602 U.S. at 908 n.4 (citing *Hawaii*, 585 U.S. at 682-83). Second, the Supreme Court elucidated the limits of its holding in *Obergefell*, holding that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id.* at 909.

1. Rule 12(b)(1)

Plaintiffs assert that the court has jurisdiction over this action pursuant to 22 U.S.C. §§ 1331 and 1361, 22 U.S.C. § 2201 *et seq.*, and 28 U.S.C. § 1331. (Compl. ¶¶ 51-53.) Defendants argue that, as the action implicates the doctrine of consular nonreviewability, the Complaint should be dismissed under Rule 12(b)(1)

13

because the court lacks subject matter jurisdiction. (Defs.' Mot. at 12-14.) In light of the Supreme Court's recent statement that "the doctrine of consular nonreviewability is not jurisdictional," Defendants' Rule 12(b)(1) argument must fail. *Muñoz II*, 602 U.S. at 908 n.4; *see also Esghai*, 2024 WL 4753799, at *3 (citing *Muñoz II* and rejecting defendant's argument that the court lacks subject matter jurisdiction*); Rashed v. Blinken*, No. 24-CV-964 (PAE), 2024 WL 4904701, at *3 (S.D.N.Y. Nov. 27, 2024) (same). A court's dismissal of a claim "based on consular reviewability is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Esghai*, 2024 WL 4753799, at *3 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021)). Consular nonreviewability does not require dismissal of the Complaint for lack of subject matter jurisdiction. Finding no jurisdictional defects, the court denies Defendants' Rule 12(b)(1) motion.

### 2.  Rule 12(b)(6)

Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted for four reasons: (1) Plaintiffs fail to plausibly allege that the visa denials implicate their constitutional rights, and such a showing is a necessary precondition to their "facially legitimate and bone fide reason" challenge; (2) Defendants provided Plaintiffs a "facially legitimate and bona fide reason" for the visa denials; (3) Plaintiffs fail to plausibly allege bad faith; and (4) the visa denials were not untimely. (Defs.' Reply at 6-15; Defs.' *Muñoz II* Br. at 5-6.) The court addresses these issues in turn.

#### a.  *Facially Legitimate and Bona Fide Reason*

Plaintiffs argued that the visa denials infringe on their Fifth Amendment due process right to marriage recognized by the Supreme Court in *Obergefell*, and that this violation is a "basis for an exception to the doctrine of consular nonreviewability." (Pls.' Opp. at 42-45.) Following the Supreme Court's holding in *Muñoz*

*II* that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country," 602 U.S. at 909, Plaintiffs now argue that the "'facially legitimate and bona fide reason' test does not require the violation of a constitutional right before it is applied," (Pls.' *Muñoz II* Br. at 3).

The court first addresses Plaintiff's Fifth Amendment claims; these claims are unavailing. *First*, with regard to the visa application submitted by Plaintiff Yan's wife, the Supreme Court foreclosed any Fifth Amendment due process claim when it held that "a citizen does not have a fundamental liberty interest in [his] noncitizen spouse being admitted to the country." *Muñoz II*, 602 U.S. at 909, 912 ("From the beginning [of the country], the admission of noncitizens into the country was characterized as of favor and *not of right*." (citing historical reports)). *Second*, if American citizens do not have a fundamental liberty interest in their spouses being admitted to the United States, it follows from "this Nation's history and tradition" that citizens also lack a fundamental liberty interest in their parents or siblings being admitted to the United Sates. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (explaining that "[o]ur Nation's history, legal traditions, and practices" provide "crucial guideposts . . . that direct and restrain our exposition of the Due Process Clause"); *see also Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 227-28 (E.D.N.Y. 2021) ("Plaintiffs point to no case law at all, let alone case law binding on this court, that recognizes a fundamental constitutional right to cohabitate with one's family members within the United States."). Therefore, Plaintiff Xiao does not have a fundamental liberty interest in living in the United States with her sister and Plaintiff Shiming does not have a fundamental liberty interest in living in the United States with his mother. Absent a fundamental liberty interest at issue here, Plaintiffs cannot plausibly state a claim that their substantive due process rights were violated. *Third*, Plaintiffs also cannot state a claim that their

procedural due process rights were violated because the IV Applications were submitted by *Plaintiffs' noncitizen relatives*, not Plaintiffs themselves. *See Muñoz II*, 602 U.S. at 919 ("Whatever else it may stand for, *Mandel* does *not* hold that a citizen's independent constitutional right (say, a free speech claim) gives that citizen a procedural due process right to a 'facially legitimate and bona fide reason' for why someone else's visa was denied. And [plaintiff] is not constitutionally entitled to one here." (emphasis added)).

Nevertheless, Plaintiffs maintain that their challenge to the visa denials survives even absent a Fifth Amendment claim because the "facially legitimate and bona fide reason" test "does not require the violation of a constitutional right before it is applied." (Pls.' *Muñoz II* Br. at 3.) This assertion misconstrues the framework announced in *Muñoz II*. The Court clarified that a U.S. citizen's constitutional rights must first be implicated before a court may exercise its review function over a consular decision. 602 U.S. at 908 ("[A] narrow exception to [the doctrine of consular nonreviewiability] exists when the denial of a visa allegedly *burdens the constitutional rights of a U.S. citizen*." (emphasis added)). Thus, it is only "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen" that a court may "consider[] whether the Executive gave a 'facially legitimate and bona fide reason' for denying the visa." *Id.* (quoting *Kerry v. Din*, 576 U.S. 86, 103-04, (2015)). Plaintiff's position is unsupported by Supreme Court or Second Circuit precedent, and the court declines to extend its review of Defendants' denial of the IV Applications beyond constitutional bounds.

Even if the court considers Plaintiffs' "facially legitimate and bona fide reason" challenge, it fails on the merits. Plaintiffs assert that Defendants' citation to a single statute, 8 U.S.C. § 1182(a)(6)(C)(i), does not constitute a "facially legitimate and bona fide reason" because that statute is not the correct statute

for marriage fraud denials and Defendants did not provide the factual predicate for the denials. (*See* Pls.' Opp. at 28-35; Xiolian Chen IV Application Denial; Jinyu Deng IV Application Denial; Xiuying Zhang IV Application Denial.) This argument is unavailing. First, Plaintiffs definitively assert in their opposition brief that "the crux of the denial was not mere fraud but marriage fraud," (Pls.' Opp. at 4), but later concede that this assertion is merely a "guess," (*id.* at 31, 29 (noting that Plaintiffs Xiao Chen and Shiming Chen "surmised that the denial [was] for marriage fraud")).

Second, Plaintiffs cite Justice Kennedy's concurrence in *Din*, 576 U.S. at 101-06, in support of their argument that "the Guangzhou consulates rote citation to a single statute is not sufficient notice of a facially legitimate and bona fide reason." (Pls.' Opp. at 32.) However, Plaintiffs incorrectly attribute a quote from that case suggesting that the government must provide the "factual basis for the Government's decision [to deny a visa] or a sufficiently specific statutory subsection that conveys effectively the same information" to Justice Kennedy's concurring opinion. (*Id.*) Indeed, the quote is from Justice Breyer's *dissenting* opinion. *Din*, 576 U.S. at 112-13 (Breyer, J., dissenting). Concurring in the Court's judgment affirming the denial of a visa application that cited a single statutory provision, Justice Kennedy cautioned that *Mandel* instructs courts "not to 'look behind' the Government's exclusion of [noncitizens] for additional factual details beyond what its express reliance on [the statute cited in the denial] encompassed." *Din*, 576 U.S. at 103-05 (Kennedy, J., concurring) (quoting *Mandel*, 408 U.S. at 770).

In accordance with binding Supreme Court precedent, the court declines to second-guess Defendants by requiring them to make a heightened factual showing for visa denials beyond the standard enacted by Congress. In any event, Plaintiffs point to no

statute or binding precedent that prohibits Defendants from citing 8 U.S.C. § 1182(a), the subsection of the statute which lists the "[c]lasses of [noncitizens] ineligible for visas or admission," upon the denial of a visa application for alleged marriage fraud. (*See generally* Compl.; Pls.' Opp.; Pls.' *Muñoz II* Br.) Accordingly, because each of the visa application denials "states the determination" and "lists the specific provision" of law under which the visas were denied, the denials were "facially legitimate and bona fide." 8 U.S.C. § 1182(b)(1); *Mandel*, 408 U.S. at 770. (Xiolian Chen IV Application Denial; Jinyu Deng IV Application Denial; Xiuying Zhang IV Application Denial.)

> ### b. *Bad Faith*

Plaintiffs also allege that Defendants denied the IV Applications in bad faith. (Compl. ¶¶ 95-118.) Bad faith may serve as the basis for an exception to consular nonreviewability, allowing judicial review of a consular decision. *See Napolitano*, 573 F.3d at 137. However, bad faith must be "pled with requisite specificity or plausibility." *Saleh*, 293 F. Supp. 3d at 429. While evidence of "retaliatory decision-making" can support such a finding, a deficient evidentiary record will not support a finding of bad faith. *Id.* (noting that a "naked assertion devoid of further factual enhancement . . . will not do").

Plaintiffs' claims that Defendants "misled" them by "asserting the possibility of obtaining a waiver" for their "[f]raud or misrepresentation" are unavailing. (*See* Compl. ¶¶ 95-118 (alleging bad faith based on waiver notification); Xiolian Chen IV Application Denial (noting that applicant should contact USCIS because "[a] waiver may be available"); Jinyu Deng IV Application Denial (same); Xiuying Zhang IV Application Denial (same).) "When an immigrant visa is refused . . . [t]he consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of

law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b). The statute cited by Defendants in the visa denials, "212(a)(6)(C)," codified as 8 U.S.C. § 1182(a)(6)(C), provides for a discretionary waiver of ineligibilities under that section. *See* 8 U.S.C. § 1182(i) ("The Attorney General may. . . waive the application of clause (i) of subsection (a)(6)(C)."). Accordingly, Defendants' notification that a waiver might be available was legally correct and therefore cannot sustain a claim of bad faith.

Plaintiffs speculate that their relatives' visa denials stem from findings of "marriage fraud" in their relatives' prior visa applications. (*See* Compl. ¶¶ 98, 105, 112.) Plaintiffs claim that Defendants acted in bad faith because Defendants failed to consider Plaintiffs' objections to Defendants' substantive findings or conduct a proper review process. (*Id.* ¶¶ 95-118.) Plaintiffs allege that "Defendants' actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (*Id.* ¶¶ 103, 110, 117.) Plaintiffs Xiao and Shiming support their bad faith claim by pointing *only* to Defendants' refusal to amend their decision after Plaintiffs argued that the visa denials were factually and legally invalid. (*Id.* ¶¶ 100-01, 107-08) Plaintiffs Xiao and Shiming's accounts fail to allege facts demonstrating a plausible claim of bad faith; their conclusory allegations are insufficient to support a claim that consular officials processed their relatives' visa applications in a retaliatory or otherwise improper manner. *See Saleh*, 293 F. Supp. at 429 (concluding that Plaintiff's "sole basis to claim retaliation"—the government's refusal to grant her visa application after she filed a mandamus action against the government—was conclusory and insufficient to support a claim of bad faith).

    Plaintiff Yan, however, alleges a plausible bad faith claim. Plaintiff Yan's account, describing Richo's allegedly corrupt behavior, provides potential evidence of bad faith that give rise to

a plausible claim. (*See* Second Yamin Yan I-130 Petition at 4.) The court nevertheless dismisses Plaintiff Yan's claims *without prejudice* because venue is not properly laid in this District. *See* 28 U.S.C. § 1391. Plaintiff Yan resides in California, none of the events or omissions giving rise to Plaintiff Yan's claims occurred in this District, and Plaintiff Yan is not subject to this court's personal jurisdiction with respect to his claims. (Compl. ¶ 7.) *See* 28 U.S.C. § 1391. Accordingly, Plaintiff Yan may file suit in California district court, should he so desire.

### c. Timeliness

Finally, Plaintiffs' timeliness claims must be rejected. Each of the visa applicants received a decision on their application either the same day as, or within a few days of, their consular interview. (Compl. ¶¶ 11-17, 22-26, 34-44.) At the same time the U.S. Consulate General, Guangzhou notified the visa applicants of the denial of their applications, it also specified the statutory provision supporting the decision. (*See* Xiolian Chen IV Application Denial (checking box beside "212(a)(6)(C)"); Jinyu Deng IV Application Denial (same); Xiuying Zhang IV Application Denial (same).) Plaintiffs cannot convert their disagreement with the outcome of the visa applications to a timeliness issue. In any event, a timeliness claim is not available to the U.S. citizen-family member of a visa applicant whose application is untimely denied. *See Muñoz II*, 602 U.S. at 917 (clarifying that "*Mandel* does *not* hold that citizens have procedural due process rights in the visa proceedings of others"). Accordingly, Plaintiffs' timeliness claims fail.

### B. Motion to Sever

As Plaintiffs' claims are dismissed, Defendants' motion to sever is denied as moot.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Defendants' motion to sever is DENIED as moot. Plaintiffs Xiao P. Chen and Shiming Chen's claims are dismissed *with prejudice* and Plaintiff Yamin Yan's claims are dismissed *without prejudice*.

SO ORDERED.


Dated:    Brooklyn, New York
          February 25, 2025

                                    s/Nicholas G. Garaufis
                                    _____
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge